This is essentially after a lien. There is a bench trial with respect to quantity. It is Mr. Wooldridge's contention that the evidence was insufficient to find above the 280 grams of cocaine base that was foreseeable and attributable to him. I would suggest to you that there were no evidence to support the claim that Mr. Wooldridge was responsible for the use of the cocaine. There were three transactions, a June transaction, a July transaction, and a separate transaction with respect to an individual named Mr. Cruz. The evidence was insufficient with respect to finding the 280 grams of cocaine base. There was 200 grams of powder cocaine that Mr. Wooldridge sold to Dunstan and Mr. Hernandez. There was no evidence at all to suggest what their relationship was. Mr. Wooldridge was right on the scene. They had a phone call with him where he was selling the powder cocaine. The evidence simply was insufficient with respect to that June transaction to attribute any cocaine base to Mr. Wooldridge. With respect to the July transaction where Mr. Wooldridge was found to be in possession of 92 grams of cocaine base, I am suggesting to the court that it would be reasonably foreseeable and attributable to find that quantity with respect to Mr. Wooldridge. With respect to Mr. Cruz and that later August 31st transaction, Mr. Wooldridge was essentially taken out of the conspiracy. There was a phone call between Mr. Hernandez and Mr. Cruz where Mr. Hernandez was trying to purchase cocaine powder for Mr. Cruz. The very next day, Mr. Wooldridge calls asking about Mr. Cruz and Mr. Hernandez says, well, he's going to prison tomorrow. That's not going to be possible. There's no other communications with respect to Mr. Wooldridge and Mr. Hernandez with respect to Mr. Cruz. In fact, about 21 days passed, we don't hear from Mr. Wooldridge. There are numerous conversations with respect to Mr. Hernandez and Mr. Cruz arranging for a purchase of this quantity of cocaine powder. I'm suggesting to the court that the Mr. Hernandez, Mr. Cruz, Mr. Dunson transaction at the end of August is not foreseeable and attributable to Mr. Wooldridge. Is there any evidence in the record that would support a finding that Wooldridge had withdrawn from the conspiracy at that point? What I'm suggesting, Judge... Could you answer my question? Yes, I can. Is there any such evidence? No. Okay. I would suggest, though, with respect to that point, is we're looking about what's foreseeable and attributable to Mr. Wooldridge. And when we have Mr. Hernandez, who's essentially pushing Mr. Wooldridge out, it seems. Mr. Wooldridge had been arrested in late July. Mr. Hernandez, yes, is speaking to him, but sort of in the sense of I'm kind of trying to keep an eye on Mr. Wooldridge here. But he's pushing Mr. Wooldridge out in no uncertain terms, saying that Mr. Cruz is not going to be available. He's going to prison tomorrow on federal conspiracy charges. I would suggest to the court that it is not... the evidence would suggest that it's no longer an expectation of Mr. Wooldridge that there's going to be any powder transactions with respect to Mr. Cruz. It's not reasonably foreseeable, thus, for him to be thinking along the lines of the transaction with Mr. Cruz. Let's leave that. If the first and second transactions are properly included, all right, that meets the 280-gram threshold, doesn't it? It does, Judge. Now, on the first transaction, you admit that there is evidence that Wooldridge is the seller of the cocaine. He is the seller of the cocaine powder, yes. Okay. And there is evidence in the record that that cocaine powder that he sold is transformed or processed by his co-defendants into crack cocaine, or at least a fact finder could so conclude. Yes, Judge. And how much is unknown, but correct. All right. And certainly that processing is foreseeable to Wooldridge, who was himself a conspirator at that point. Well, that's our point. No, not necessarily. He's admitted that he is guilty of participation in a conspiracy to possess with intent to distribute crack cocaine. Correct. All right. And he sells cocaine or delivers cocaine to his co-defendants, who then process it into crack cocaine. And you say that there's something more that's necessary to hold him responsible for that amount? Yes, Judge, if I may just answer the question. Sure. There's an absence of evidence of any relationship between Mr. Hernandez, Mr. Dunston, and Mr. Wooldridge. All we know is that at that original transaction in June is that Mr. Wooldridge sold powder cocaine to Mr. Hernandez and Mr. Dunston. That's it. There's no... No, no. We know one further thing. That all three of them have subsequently admitted to being members of the same conspiracy at that time. They... We know that because they were all pleaded guilty. And then we get to a call and solace issue with respect to what's reasonable and perceivable. Wasn't there, just before you sit down, I thought there was a phone call between Hernandez and Wooldridge in late July, in which, if I've got it right, Hernandez says, all right, you want me to do it up, right, or are you going to... And then, well, just, I mean, is it going to come out extra, you think? Hernandez then says, I don't know, all right. Wooldridge says back, you do yours up first, though. If you don't get extra, then I'm going to whip it. I can't tell you that I fully grasp that. But my sense of it is that that's evidence the government is relying on to suggest that what they're talking about is the conversion of the one form to the other. For the July 31st transaction, Judge. Well, but why can't the fact finder conclude that apparently there was a basis for thinking that Wooldridge knows that the material, that the cocaine powder he gives is going to be transformed into cocaine, into crack? And my argument is simply that he knows that during that July 31st transaction, but I don't think that we can relate all the way back to June to know what the relationship of the parties was back in June. Thank you. Good morning, Your Honors. For the record, Michael Day. I'm from Connecticut. I represent Sergio Hernandez. May it please the Court, I'd like to reserve two minutes for rebuttal, please. Thank you. There are two issues before the Court presented by Mr. Hernandez. The first being whether the district court erred when it found 2.8 kilograms of cocaine base attributable to the defendant, and the second issue is whether the district court erred when it relied upon CORI material, that's the Massachusetts Connecticut Offender Record Information, as proof for the predicate offense for career offender purposes. I'd like to commence with the second issue and address the harmlessness that has been addressed by the government. The government has presented on appeal documents purporting to show predicate offenses for career offender purposes. The issue here is, there's a number of issues. First is the CORI material, this Court has apparently not passed upon or decided whether CORI material is indeed shepherd material for career offender purposes. Second, the government proposes that it can provide these state court records, which it does have authority to provide state court records on appeal on a sort of limited basis, U.S. v. Mercado. However, in U.S. v. Mercado and also U.S. v. Florentino, the presentation of this information on appeal did not concern shepherd material, and I would respectfully argue to the Court that there's something unique about shepherd material. There's an evidentiary nature to shepherd material. U.S. v. Brown, when there is a challenge at sentencing to material that is offered, say, through the pre-sentence report, more is required, and that's exactly what occurred in this case. There was a preliminary sentencing hearing. There was a challenge to the representations in the PSR of the CORI material. Thereafter, it was indicated in the PSR that certified copies of the convictions were ordered but not yet received. The Court certainly found this to be a very important issue, delayed sentencing, and then reconvened sentencing. At that second sentencing hearing, none of this information was presented, and the Court proceeded based upon these CORI representations. This case is very similar to U.S. v. Bryant, where there was New York State police information, national crime information, and the case was remanded to the trial court for a proper hearing to determine whether that was CORI material. You said earlier that we haven't passed on CORI material, which is my understanding. I had thought, tell me if I have it wrong, that you can rely on representations in the PSR even if you don't have the shepherd documents, but you can't rely, we said in Bryant, on representations about the New York criminal investigation information. Do I have that right? I believe that's correct. Okay, so the thing that assumes the gap is, okay, the PSR here was relying on CORI information. Yes, sir. And the question then is, is CORI information sufficiently reliable that you could rely on it when it's put there, even though it's not shepherd documents? Or is the CORI information like the New York records that we said in Bryant weren't reliable? I'm sorry, did you say more reliable, Your Honor? Is the CORI somehow more reliable than the New York? And is that open or is that, we haven't squarely resolved that issue. I believe that's accurate. Okay, do we have anything here to tell us whether the CORI records are something that you should be relying on or something that we should have skepticism about? Your Honor, I don't think we do. However, what I will say is there was a challenge, obviously, in sentencing to this, and there was a discussion about documents that were provided where one sentence was kind of written on top of the other, was it increased, subbed down, there was some confusion over this. So I think at least, kind of answering the court's question, there was enough of a challenge here where more was required. And the more, when there is a challenge, you're saying must be the actual shepherd documents? That is my argument to the court, Your Honor. And for this court to undertake the analysis of documents that are put into a brief at the end of a brief, I think because of U.S. v. Brown, the more is required, it essentially is placing this court into a fact-finding role, and that would be best served by the trial court. And lastly, though, with respect to the documents that now are before us on appeal that they've tried to put before us, do you raise any issue with whether there might be problems? I mean, is there a practical benefit to you of this being remanded? What will come out of it? I'm just curious. I'm quite frankly not sure, Your Honor, what exactly will come out of it. But what I can say is that the information that's been provided, if I may just finish, Your Honor, answering Your Honor, the information that's been provided is essentially a photocopy, and I'm not doubting anything with respect to that, but there must be an independent analysis. And the problem here is that it's far past sentencing. The defendant does not have the ability to raise this issue, to object, and for the court to assess the quality of this information, it is after the fact, and that is an impingement upon the defendant's rights. With respect to the drug quantity issue, I'll rely upon my brief and take it up in rebuttal. Thank you. Thank you. Mr. Barron, and may it please the Court, Mark Quinlivan on behalf of the United States. Mr. Quinlivan, could you start with the issue that we just finished with, the so-called quarry documents? Absolutely, Judge Steyer, and let me begin with my understanding of what this Court said in Bryant. What this Court said is that the government has a modest burden in establishing the existence of a prior conviction, and that burden can be met by a representation in the pre-sentence report. However, if the defendant objects to the representation in the pre-sentence report, and Mr. Hernandez did do so in this case, the Court in Bryant said something more is required. Where I disagree with my friend is that this Court in Bryant quite clearly stated that it was not adopting Shepard as the touchstone for the additional materials that could be required. In fact, this Court left it to the district court in the first instance to make that determination. We've submitted the docket sheets for these convictions. In our view, under Mercado, this Court can take judicial notice of it. If this Court disagrees and thinks that it would be better for the district court in the first instance to pass on that, then we would submit that the appropriate course is to remand for the limited purpose of determining whether or not the government had met its burden of establishing the existence of these convictions. It seems to me that there was just one step that you might have skipped over, or I'm not understanding how the Bryant works. When you say we didn't require them to come back with Shepard documents, we just said there had to be something that would be more reliable. I thought in Bryant we thought the type of document that was being referred to was not the kind of thing that was itself sufficiently reliable. I believe, and my reading of Bryant is that this Court, if no objection had been raised in the district court to the PSR,  But once the objection was raised, that no longer was reliable. That's right.